Victor STEVE, Sr., Appellant,

v.

STATE of Alaska, Appellee.

Nos. A-4800, A-4810.

Court of Appeals of Alaska.

June 10, 1994.

Randall Cavanaugh, Anchorage, for appellant.

Eric A. Johnson, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before COATS and MANNHEIMER, JJ., and WOLVERTON, District Court Judge.*

## OPINION

MANNHEIMER, Judge.

A Nome grand jury indicted Victor Steve, Sr., on two counts of second-degree sexual abuse of a minor, AS 11.41.–436(a)(1). A superior court jury found Steve guilty of one count and acquitted him of the other. Superior Court Judge Michael I. Jeffery sen-

---

* Sitting by assignment of the chief justice made pursuant to Article IV, Section 16 of the Alaska Constitution.

tenced Steve to 10 years' imprisonment with 3 years suspended (7 years to serve). This sentence was imposed consecutively to a 5–year sentence Judge Jeffery imposed when, as a consequence of Steve's new conviction, he revoked Steve's probation from a previous sexual abuse of a minor conviction. Thus, Steve received a composite sentence of 12 years' imprisonment with 3 years suspended (9 years to serve).

Steve appeals both his new conviction and his sentence. We affirm.

### 1. Indictment Issues

Steve first argues that his indictment should have been dismissed before trial because of improprieties in the prosecutor's presentation of the case to the grand jury. Steve was indicted for sexually abusing two fifteen-year-old girls, E.W. and C.S.. E.W. was the State's first witness at grand jury. Early in her testimony, the following exchange occurred:

PROSECUTOR: Do you know somebody named Victor Steve?

E.W.: Yes.

PROSECUTOR: How do you know Victor Steve?

E.W.: Hmm.

PROSECUTOR: Does he live in Stebbins? Is that a person who has lived in Stebbins basically all his life?

E.W.: No, he was in prison for, how many years? He came back maybe four or five years ago.

PROSECUTOR: OK, and then you've known him ever since then?

E.W.: Yeah.

Based on this testimony, Steve argued that the prosecutor had intentionally elicited testimony about Steve's prior imprisonment, thus prejudicing the grand jury's consideration of his case.

Judge Jeffery rejected this attack on the indictment. He found that the prosecutor had not intentionally elicited testimony about Steve's prior imprisonment; rather, Judge

Jeffery found that E.W.'s statement had been an unanticipated response to a neutral question concerning how long she had known Steve. In addition, Judge Jeffery noted that the prosecutor later instructed the grand jury to disregard E.W.'s statement. The prosecutor cautioned the grand jury about this evidence when one of the grand jurors asked why Steve had been in jail. The prosecutor replied that he could not answer that question,

> [a]nd I'd ask the grand jury not even to consider that.... I wasn't anticipating that answer from her. And that's not usually admissible, and I try to keep that stuff out, because that's not something that you should consider. It popped out, it's in front of you, but please don't consider that.

Judge Jeffery found this curative instruction to be a sufficient remedy. He also found that, given the strength of the State's case at grand jury, the erroneous mention of Steve's prior prison sentence was harmless:

> Review of the testimony ... shows that the state's case is quite strong.... The court finds that the inadmissible evidence concerning defendant's jail time did not "appreciably affect the outcome of the grand jury's deliberations", given the strength of the state's admissible evidence. The grand jury heard ample evidence "to persuade reasonably minded persons that if unexplained or uncontradicted it would warrant a conviction" on each count.

A trial court's decision to dismiss or uphold an indictment is reviewed for abuse of discretion. *Sheldon v. State,* 796 P.2d 831, 834 (Alaska App.1990). We do not find an abuse of discretion here. In addition to the factors mentioned by Judge Jeffery, we also note that the grand jurors were not apprised of the reason Steve had been imprisoned earlier (a prior sexual abuse conviction). We therefore uphold Judge Jeffery's rejection of this attack on the indictment.

■ The State's second grand jury witness was C.S.. During her testimony, she told the grand jurors that, because of unspecified "problems", she had been hospitalized twice at North Star Hospital. Later, one of the grand jurors asked about C.S.'s stays at North Star Hospital. The prosecutor re-plied, "You can ask her. You can't ask me." The grand juror then said, "Oh. Sorry."

In his motion to dismiss the indictment, Steve characterized the prosecutor's action as tantamount to foreclosing grand jury inquiry into C.S.'s mental health. Judge Jeffery did not view the exchange this way. He declared:

> The grand jury tape discloses that the grand juror who asked the question was satisfied with the prosecutor's answer that the grand jury would need to recall the witness to obtain more information about the North Star Hospital admission. After having been informed of the possibility of doing so, the grand jury did not take the opportunity. There is no error as to this issue.

We find no abuse of discretion in Judge Jeffery's ruling.

■ Steve's final attack on the indictment involves another portion of C.S.'s testimony. A grand juror asked C.S. why she and her friends kept going back to visit Steve. C.S. replied that Steve gave them marijuana. She elaborated that Steve had gotten her "stoned" a few times, and that, on these occasions, he had told her that he wanted something in return—which C.S. understood to mean sex. C.S. told the grand jury that she knew "his ways—getting other girls, I know how he does it. I know what he tries to do. Seen it all."

A grand juror later asked a state trooper witness if the authorities had considered charging Steve with furnishing marijuana to the girls. The trooper replied that, even though C.S. had made such statements, the troopers had no independent proof that this had occurred.

In his motion to dismiss the indictment, Steve argued that C.S.'s statements about Steve's furnishing marijuana to the girls unfairly prejudiced the grand jury proceeding. Judge Jeffery, however, found that this evidence was admissible because it tended to show Steve's scheme or plan to obtain sex from the girls in exchange for alcohol and/or drugs. Judge Jeffery stated:

[These] statements are admissible because they relate to the common scheme or plan of the defendant to offer the victims and their friends alcohol and drugs in return for sex. Such information is not "marginal" to the issues in the case. The statements clearly fit the criteria for admission of such testimony established in Evidence Rule 404(b)(2).

In his brief to this court, Steve again argues that the grand jury should not have heard evidence that Steve furnished alcohol or drugs to C.S. and her friends. However, he ignores Judge Jeffery's ruling that the contested evidence was admissible under Alaska Evidence Rule 404(b). Because Judge Jeffery's ruling goes unchallenged and because it is not plainly mistaken, we find no abuse of discretion.

For all these reasons, we uphold Judge Jeffery's denial of Steve's motion to dismiss the indictment. We now turn to Steve's direct attack on his conviction.

### 2. Constitutionality of AS 11.41.445(b)

At the close of the State's case-in-chief, Steve asked Judge Jeffery to grant him a judgement of acquittal. Steve argued that the State had failed to rebut the possibility that Steve reasonably believed that his sexual partners were older than 16.[1] Judge Jeffery denied Steve's motion. He found that there was sufficient evidence to convince reasonable minds that Steve knew that the girls were younger than 16, or, if Steve believed that the girls were older than 16, that Steve's belief was unreasonable.

Steve's defense at trial was, in fact, that he reasonably believed his sexual partners were older than 16. Under AS 11.41.445(b), a defendant charged with sexual abuse of a minor older than 13 but younger than 16 can defend by showing that he or she reasonably believed that the child was older than 16. The statute declares that this defense is an "affirmative defense"—that the defendant

bears the burden of proving this defense by a preponderance of the evidence. *See* AS 11.-81.900(b)(1).

Pursuant to AS 11.41.445(b), Judge Jeffery instructed the trial jury:

[I]f you decide that it is more likely than not that the defendant reasonably believed during the incidents charged in either or both counts that the victim was 16 years of age or older, then you must find him not guilty of the charge as to that count or counts.

Steve did not object to this instruction or to the related instruction defining "affirmative defense".[2]

Three months after the jury's verdict, Steve filed a pleading which he styled a renewal of his motion for judgement of acquittal. For the first time, Steve argued that AS 11.41.445(b) was unconstitutional because it made the defendant shoulder the burden of proof on the issue of whether the defendant had a reasonable belief that his or her sexual partner was older than 16. Judge Jeffery denied Steve's motion, and Steve raises this same argument on appeal.

At the outset, we must point out that Steve's attack on the constitutionality of AS 11.41.445(b) is not a "motion for judgement of acquittal". A motion for judgement of acquittal challenges the sufficiency of the State's evidence. Steve's mid-trial motion for judgement of acquittal did just that. In his mid-trial motion, Steve argued that, even viewing the evidence in the light most favorable to the State, reasonable jurors would have to agree that Steve had reasonably believed his sexual partners to be at least 16 years old. (Steve has not renewed this argument on appeal.)

However, Steve's "renewed" motion for "judgement of acquittal" raised a quite different argument. In that post-trial pleading, Steve argued that the Alaska legislature acted unconstitutionally when it defined the

---

1. In this opinion, the phrase "older than 16" means that the person has attained his or her 16th birthday—that the person is at least 16 years old. Conversely, "younger than 16" means that the person has not yet reached his or her 16th birthday.

2. This defense may have been the basis of the jury's decision to acquit Steve of the charge involving C.S.. At trial, C.S. testified that, a few weeks before she and Steve engaged in intercourse, she falsely told him that she was celebrating her 16th birthday.

offense; he argued that due process requires the State to bear the burden of disproving a defendant's asserted belief that his or her sexual partner was old enough to consent to the sexual act. This is not a "motion for judgement of acquittal" because it does not question the factual sufficiency of the State's evidence. As this court stated in *State v. Martushev*, 846 P.2d 144 (Alaska App.1993),

> When "the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged," that ruling is a judgment of acquittal[.] *State v. Thronsen*, 809 P.2d 941, 943 (Alaska App. 1991) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977)). Conversely, when a court orders dismissal on legal grounds that do not require resolution of the factual elements of an offense, the order does not amount to a judgment of acquittal, regardless of its timing or the label attached thereto. *Cf.* Alaska R.Crim.P. 12(b) (empowering the court to adjudicate, prior to trial, "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue"); *State v. Hebert*, 803 P.2d 863, 868–69 (Alaska 1990) (a trial defense based on invalidity of regulation upon which prosecution is based would, if established, render complaint invalid and warrant a dismissal).

*Martushev*, 846 P.2d at 148.

Steve nevertheless argues that, if he is correct that AS 11.41.445(b) unconstitutionally shifts the burden of proof, then this court should re-examine the sufficiency of the State's evidence under the newly re-allocated burden of proof to see if Steve should be granted a judgement of acquittal. We reject this argument.

Under the double jeopardy clause, a defendant who has been granted a judgement of acquittal can not be tried again for the same offense. *Miller v. State*, 648 P.2d 1015, 1017 (Alaska 1982). This preclusive effect of a judgement of acquittal is premised on the assumption that the government had a fair opportunity to litigate the defendant's guilt. However, if the defendant convinces an appellate court that the trial court adopted an erroneous definition of the offense or misallocated the burden of proof, this conclusion necessarily undermines the assumption that the government had its fair day in court. We can not know what evidence the State might have presented at Steve's trial if it had known that, contrary to AS 11.41.445(b), the State bore the burden of proof on the issue of Steve's belief concerning the ages of his sexual partners. Thus, if Steve were correct that AS 11.41.445(b) unconstitutionally shifts that burden of proof, Steve would be entitled to a new trial, not an outright acquittal. *See State v. Marathon Oil Co.*, 528 P.2d 293, 296 n. 7 (Alaska 1974), quoting *Woodring v. United States*, 337 F.2d 235, 236–37 (9th Cir.1964), *cert. denied* 380 U.S. 933, 85 S.Ct. 937, 13 L.Ed.2d 820 (1965): "It is well established that one who secures a reversal of a conviction on a mere error of law is not subjected to double jeopardy when he is retried." *Compare Houston–Hult v. State*, 843 P.2d 1262, 1265 n. 2 (Alaska App.1992) (a defendant who contends on appeal that the trial judge should have excluded a portion of the State's evidence can not then argue that the State's remaining evidence was insufficient to withstand a motion for judgement of acquittal).

We turn now to Steve's contention that AS 11.41.445(b) is unconstitutional to the extent that it makes "mistake of age" an affirmative defense—that is, to the extent that the statute shifts the burden of proof to the defendant.

### (a) History of AS 11.41.445(b)

At common law, rape (whether forcible or "statutory") was a general intent crime. The government had to prove that the defendant voluntarily committed an act of sexual intercourse, and the government had to prove the circumstance that made the sexual intercourse illegal (either the victim's lack of consent or the victim's being under-age). However, the government did not have to prove that the defendant was subjectively aware of this circumstance.

With regard to forcible rape, the Alaska Supreme Court stated in *Walker v. State*, 652 P.2d 88 (Alaska 1982):

[R]ape is a general intent crime. All that is required for a conviction for a general intent crime is proof of the voluntary commission of the prohibited act. Thus, the state was required to prove only that Walker volitionally had intercourse, forcibly and against M.M.'s will. . . . [S]pecific intent is not an element of the offense of rape[.]

*Walker,* 652 P.2d at 91 (citations omitted); *accord Reynolds v. State,* 664 P.2d 621, 623 (Alaska App.1983) (citations omitted) ("At common law, rape . . . was a general intent crime. . . . The state was required to prove that the defendant intentionally engaged in the prohibited conduct, *i.e.,* sexual intercourse to which the complaining witness had not consented. However, it was not necessary for the state to prove that the defendant knew or should have known that the victim did not consent.") [3]

The same was true of "statutory" rape:

A man who has unlawful sexual intercourse with a girl under the age of consent is guilty of carnal knowledge of a child (the so-called "statutory rape") although she consented and he mistakenly believed she was older than the limit thus established. Under the prevailing view[,] this is true no matter how reasonable the mistaken belief may have been, as in cases in which both her appearance and her positive statement indicated that she was older than the age specified in the statute, or in which he had exercised considerable diligence in the effort to ascertain her age.

R. Perkins & R. Boyce, *Criminal Law* (3rd ed. 1982), Ch. 2, Sec. 5–E, pp. 218–19 (footnotes omitted) (citations omitted). In *Anderson v. State,* 384 P.2d 669, 671 (Alaska 1963), our supreme court recognized (and followed) the common-law rule that persons having intercourse with children "do so at their peril".

In the 1960s, the American Law Institute recommended in its Model Penal Code that defendants charged with statutory rape be given the opportunity to demonstrate that they honestly and reasonably believed that their sexual partners were of legal age. Model Penal Code § 213.6(1) provides that defendants should bear the burden of proving this "reasonable mistake" defense by a preponderance of the evidence:

(1) *Mistake as to age.* . . . When criminality depends on the child's being below a critical age [older] than 10, it as a defense for the actor to prove by a preponderance of the evidence that he reasonably believed the child to be above the critical age.

*Model Penal Code,* Official Draft, 1962, Part II, § 213.6(1). The Model Penal Code drafters expressly chose to place the burden on the defendant as an accommodation of competing social policies:

Traditionally, statutory rape has been a strict liability offense, and mistake as to the age of an underage participant has been accorded no [exculpatory] significance. At one time, this rule obtained in virtually every American jurisdiction, and it continues today in a large number of states.

. . . .

The Model Code effects a compromise between the traditional rule disallowing mistake in the law of statutory rape and a general policy against strict liability crimes. Without Section 213.6(1), the normal operation of [Model Penal Code 2.02(3)] would apply a *mens rea* of recklessness to the age element in statutory rape. . . . [However], Section 213.6(1) provides . . . that the actor may defend in cases where the age is set higher than 10 by proving that he "reasonably believed" his sexual partner to be above the specified age. The phrase "reasonably believed" is defined in Section 1.13(16) . . . to establish

---

**3.** The fact that common-law rape was a general intent crime rather than a specific intent crime was important when a defendant tried to assert that he was too intoxicated to understand that his sexual partner was unwilling. Because rape did not require proof that the defendant intended to overcome his victim's resistance or even that the defendant recklessly disregarded his victim's

lack of consent, a defendant's drunken failure to perceive his victim's lack of consent was irrelevant. *State v. Keyonnie,* 91 N.M. 146, 147–48, 571 P.2d 413, 414–15 (1977); *Boyd v. State,* 572 P.2d 276, 278–79 (Okla.Crim.App.1977); *Gallup v. State,* 559 P.2d 1024, 1026–27 (Wyo.1977); *see also United States v. Thornton,* 498 F.2d 749, 751–53 & n. 12 (D.C.Cir.1974).

a minimum culpability of negligence. The defendant must establish both the fact and [the] reasonableness of his mistake by a preponderance of the evidence. This rule places a heavier burden on the defendant than is generally provided by the Model Code.... It was thought, however, that [this allocation of the burden of proof] could validly be [made] given ... the fact that, even crediting the actor's claim of mistake, his conduct would nevertheless amount to a conscious disregard of community standards.

American Law Institute, *Model Penal Code & Commentaries* (1980), Part II ("Definition of Specific Crimes"), Comment to Section 213.6(1), pp. 413, 415–16 (footnotes omitted) (citations omitted).[4]

When the Alaska Criminal Code Revision Subcommission drafted Alaska's revised criminal code in 1977, they followed the Model Penal Code's recommendation. In their discussion of Tentative Draft 11.41.-400(a)(1)—the provision that ultimately was enacted as AS 11.41.445(b)—the drafters explained that they intended to create a "mistake of age" defense where none existed before:

[This section] allows reasonable mistake as to the age of the victim as an affirmative defense under limited circumstances where criminal liability depends on that factor. While existing law recognizes that "persons having illegal relations with children do so at their own peril", *Anderson v. State* [,] 384 P.2d 669, 671 (Alaska 1963), the Revised Code allows a defendant to escape liability if he proves by a preponderance of the evidence that he reasonably believed the victim to be above 16 when

criminality depends on the victim being less than 16.

Alaska Criminal Code Revision, Tentative Draft (1977), Part 1, pp. 80–81.

The Alaska legislature adopted the revised code (and, in particular, the mistake-of-age provision) in 1978. The new criminal code became effective on January 1, 1980. Ch. 166, §§ 3, 25, SLA 1978.

*(b) The Alaska Supreme Court's Decision in State v. Guest*

Between the time the revised code was passed and the time it took effect, the Alaska Supreme Court confronted the mistake-of-age issue in *State v. Guest*, 583 P.2d 836 (Alaska 1978). The defendant in *Guest* had been charged (under the former criminal code) with statutory rape of a 15–year–old girl. Guest asked the trial court to instruct the jury that they should acquit him if they found that he had held a reasonable belief that the girl was 16 years old or older. The trial judge ruled that Guest was entitled to such an instruction, and the State petitioned for review. *Guest*, 583 P.2d at 837.

The supreme court recognized "that in most jurisdictions a reasonable mistake of age is not a defense to a charge of statutory rape". *Guest*, 583 P.2d at 837–38. Nevertheless, the court relied on its decisions in *Speidel v. State*, 460 P.2d 77 (Alaska 1969), *Alex v. State*, 484 P.2d 677 (Alaska 1971), and *Kimoktoak v. State*, 584 P.2d 25 (Alaska 1978), for the proposition that "consciousness of wrongdoing is an essential element of penal liability". *Guest*, 583 P.2d at 838. Under this principle, the court concluded, "the charge of statutory rape is legally unsupport-

4. By 1980, the American Law Institute could write:

This compromise solution has proved extremely influential. Since promulgation of the Model Code, at least 16 states have enacted revised statutes according the actor a defense if he affirmatively proves [a] reasonable belief that his partner was older than the upper age limitation of statutory rape. Additionally, at least six recent [legislative] proposals embody this change. A few states ... have adopted the Model Code position either by judicial decision or specific statute on the subject.... The result is that today a majority of American juris-

dictions have abandoned the traditional rule of strict liability[.] Quite commonly, however, jurisdictions allowing the [mistake-of-age] defense for higher ages still disallow mistake for the very young ages used to define the most serious version of the offense. There are also a number of revised criminal codes that [still] follow the traditional view and disallow the mistake defense completely[.]

American Law Institute, *Model Penal Code & Commentaries* (1980), Part II, Art. 213, Comment to Section 213.6(1), pp. 416–17 (footnotes omitted) (citations omitted).

able ... unless a defense of reasonable mistake of age is allowed". *Id.* at 838–39.

Steve construes *Guest* to mean that a defendant's awareness of the victim's age is an element of the crime—that once a mistake-of-age defense is raised, the State bears the burden of disproving the defense beyond a reasonable doubt. We disagree. *Guest* does not directly address the question of which party bears the ultimate burden of proof on this issue. However, in footnote 2 of its opinion (583 P.2d at 838), the supreme court approvingly cited AS 11.41.445(b) (which had been passed by the legislature but had not yet taken effect), as well as statutes from three other states (Arkansas, Montana, and Washington), as examples of the kind of mistake-of-age defense that Alaska law required. All of these provisions place the burden of proof on the defendant.[5] If *Guest* was intended to stand for the proposition that the Alaska constitution requires the government to bear the burden of proof, then it is reasonable to infer that the supreme court would have addressed these statutes in a very different manner.

Steve nevertheless argues that, regardless of what *Guest* says on this issue, the Alaska legislature denied him and similarly situated defendants due process of law when, in AS 11.41.445(b), they placed the burden of proving a reasonable mistake of age on the defendant. Steve contends that, as a matter of constitutional law, a defendant's knowledge of the victim's age must be an element of the crime of sexual abuse of a minor. Restated, Steve contends that the government can not punish a person for a consensual act of sex unless the government proves beyond a reasonable doubt that defendant knew that the sexual partner was under-age, or at least proves that the defendant acted with reckless or criminally negligent disregard of the victim's age.

### (c) Federal Constitutional Analysis

■ Steve's argument finds little support in federal constitutional law. It is axiomatic that, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the government must bear the burden of proving every element of a crime beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, the United States Supreme Court has repeatedly held that legislatures have considerable latitude when they define the elements of any criminal offense.

For instance, at common law, the crime of murder required proof of the element of "malice"—the absence of any mitigation, justification, or excuse for the homicide. Thus, in states using the common-law definition of murder, the government is required to prove beyond a reasonable doubt that (for example) the defendant did not act in the heat of passion. *See e.g., Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

However, many states have adopted revised criminal codes that abandon the common-law definition of murder and define the crime simply as the intentional killing of another human being. Alaska has adopted this definition of murder. *See* AS 11.41.-100(a)(1). Under this revised definition of murder, the crime no longer requires proof of "malice". Thus, the defenses of "heat of passion" and "self-defense" no longer negate any element of the crime. That is, a killing done in the heat of passion or in self-defense is still an intentional killing. The fact that the defendant acted in the heat of passion or acted in self-defense is an additional factor that does not disprove any element of the crime, but this fact can mitigate or excuse an intentional homicide that would otherwise be murder.

When a defense does not require disproof of any element of the crime but rather involves proof of additional facts that operate to justify, excuse, or mitigate the seriousness of what would otherwise be criminal conduct, *Winship* no longer requires the government to bear the burden of disproving the defense beyond a reasonable doubt. Instead, the legislature can place the burden of proof wherever it sees fit: the legislature may still require the government to disprove the as-

---

5. The most current versions of the other states' statutes are Arkansas Code §§ 5–1–111(d) and 5– 14–102(c), Montana Code § 45–5–511(1), and Washington Code § 9A.44.030(2), (3).

serted defense, or the legislature may require the defendant to affirmatively prove the defense. The burden of proof is not constitutionally compelled but can be selected on policy grounds. *See Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (the defendant can be made to prove self-defense by a preponderance of the evidence); *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (the defendant can be made to prove heat of passion by a preponderance of the evidence); *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (the defendant can be made to prove insanity beyond a reasonable doubt). *And see Engle v. Isaac,* 456 U.S. 107, 120, 102 S.Ct. 1558, 1567–68, 71 L.Ed.2d 783 (1982) (the fact that the legislature chooses to "require[ ] the prosecution to prove a particular circumstance beyond a reasonable doubt [does not invariably mean that] it has ... defined that circumstance as an element of the crime").

This general rule of federal constitutional law was set forth in *Patterson:*

> We ... decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause [only] requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required....

*Patterson,* 432 U.S. at 210, 97 S.Ct. at 2327.[6]

As noted earlier in this opinion, the drafters of Alaska's revised criminal code followed the Model Penal Code approach; they created a "reasonable mistake of age" affirmative defense for defendants charged with engaging in sexual relations with children older than 13 and younger than 16. The drafters of Alaska's criminal code also followed the Model Penal Code by placing the burden of proving this defense upon the defendant. The Alaska legislature adopted the drafters' position when the legislature enacted AS 11.-41.445(b).

In *State v. Smith,* 176 Mont. 159, 576 P.2d 1110 (1978), the Montana Supreme Court upheld that state's mistake-of-age statute against the same due process attack raised by Steve in this case. The Montana court noted that most states do not recognize a mistake-of-age defense to statutory rape; the Montana legislature had, by affirmative act, created a mistake-of-age defense where none existed before. The Montana court therefore held, under *Patterson v. New York,* that the state legislature's decision regarding which party was to bear the burden of proof was a matter of policy, not due process.

We reach the same conclusion when we analyze Alaska's statute under the Federal Constitution. The drafters and enacters of AS 11.41.445(b) created a mistake-of-age defense to relieve defendants from strict liability for sexual relations with children older than 13 and younger than 16. However, the defendant must prove this exculpatory mistake by a preponderance of the evidence. This change in the law is consistent with the constitutional guarantee of due process. As the Second Circuit noted in *United States v. Mitchell,* 725 F.2d 832 (2nd Cir.1983),

> [W]e do well to bear in mind the Supreme Court's observation that "[t]he doctrines of

---

6. This court has had occasion to discuss and apply this rule of constitutional law. In *Walker v. State,* 674 P.2d 825 (Alaska App.1983), the defendant challenged the constitutionality of AS 11.81.440(a), the statute which declares that a defendant must establish the defense of duress by a preponderance of the evidence. Noting that the *Patterson* decision demonstrated that "the

United States Supreme Court wished to give state legislatures considerable leeway in defining defenses to crimes", 674 P.2d at 828, this court ruled that Alaska's duress statute was constitutional. 674 P.2d at 828–29. This court's decision was upheld by the Ninth Circuit against a federal habeas corpus challenge. *Walker v. Endell,* 850 F.2d 470 (9th Cir.1988).

*actus reus, mens rea,* insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man," *Powell v. Texas,* 392 U.S. 514, 536, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254 (1968).

*Mitchell,* 725 F.2d at 835.

In promulgating AS 11.41.445(b), the Alaska legislature balanced society's interest in deterring sexual abuse of minors against the policy of allowing defendants to show that they did everything reasonably possible to ascertain the age of their sexual partners. Such a balancing—and, in particular, the decision to allocate the burden of proof to the defendant—is within the constitutional bounds of legislative action. In light of the United States Supreme Court's decisions in *Martin v. Ohio* and *Patterson v. New York,* we conclude that AS 11.41.445(b) does not violate the Federal Constitution's guarantee of due process.

### (d) Alaska Constitutional Analysis

■ Steve also argues that AS 11.41.445(b) is inconsistent with *Speidel v. State,* 460 P.2d 77 (Alaska 1969), and subsequent decisions construing the due process clause of the Alaska Constitution (Art. I, Section 7).

*Speidel* involved a prosecution under former AS 28.35.026, which made it a felony to "willfully neglect" to return a rented car at the end of the rental term. The statute defined "willfully neglect" to include "omit[ting], fail[ing], or forbear[ing] ... without regard for the rights of the owner, or with indifference whether a wrong is done the owner or not". *Speidel,* 460 P.2d at 78. The supreme court held that this definition of the crime was constitutionally defective because it failed to require proof of an intent to injure or impair the property interests of the owner:

It is said to be a universal rule that an injury can amount to a crime only when inflicted by intention—that conduct cannot be criminal unless it is shown that one charged with criminal conduct had an awareness or consciousness of some wrongdoing.

. . . .

Under this [definition of "willfully neglects",] it is possible for one to be found guilty of the offense when there was an entire lack of any conscious deprivation of property or intentional injury. If [a defendant] fails to return an automobile out of neglect, without any intention to deprive the owner of his property or to convert the property to [the defendant's] own use, or of doing wrong to the owner, [the defendant] is made guilty of a felony although he may have acted unwittingly or inadvertently or negligently. This is contrary to the general conditions of penal liability requiring not only the doing of some act by the person to be held liable, but also the existence of a guilty mind during the commission of the act.

. . . .

Under the terms of [former] AS 28.35.026 there is no escape from a felony conviction ... for simple neglectful or negligent failure to return a rented automobile at the time specified in the rental agreement. To make such an act, without consciousness of wrongdoing or intention to inflict injury, a serious crime ... is inconsistent with the general law. To convict a person of a felony for such an act, without proving criminal intent, is to deprive such person of due process of law.

*Speidel,* 460 P.2d at 78, 80.

To the extent that *Speidel* construed a theft-related crime to require an "intent to deprive" element, it is unexceptional. However, in reaching this result, the court used language suggesting that the guarantee of due process was violated whenever a criminal offense did not require proof "that [the] one charged with criminal conduct had an awareness or consciousness of some wrongdoing". *Id.* at 78. Construed literally, this language would forbid such crimes as criminally negligent homicide, AS 11.41.130(a), which is distinguished from manslaughter, AS 11.41.120(a), on the very basis that the defendant acted without subjective awareness of wrongdoing. *See* the definitions of "recklessly" and "criminal negligence", AS 11.81.900(a)(3)

and (a)(4). Moreover, this same language casts doubt on the constitutionality of many "general intent" crimes.

The Alaska Supreme Court soon had occasion to revisit this issue of "awareness of wrongdoing" in *Alex v. State*, 484 P.2d 677 (Alaska 1971). The first question presented in *Alex* was whether the crime of escape required a specific intent to "avoid the due course of justice", or whether escape was instead a general intent crime, requiring only that the defendant voluntarily do acts that result in his unlawful removal from custody. The supreme court held that escape was a general intent crime. 484 P.2d at 678–680.

The defendant in *Alex* then argued that, if escape was a general intent crime, it was unconstitutional under *Speidel* because a prisoner might be convicted of a felony without "an awareness or consciousness of wrongdoing". *Id.* at 680. The court rejected this expansive interpretation of *Speidel:*

> [In *Speidel*, we] emphasized that under the statute a person might suffer a felony conviction for a simple negligent failure to act. To make such an act a serious crime without regard to an awareness of wrongdoing or the intentional infliction of injury was, in our opinion, inconsistent with the general law.... We solidly adhere to that holding today.
>
> ....
>
> This court would not then and will not now sanction conviction of a serious felony for mere inadvertence or simple neglect. However, undue emphasis should not be placed upon our use of the term "wrongdoing" in [*Speidel*]. It must be remembered that in *Speidel* we were dealing with a larceny-type offense. In reaching our decision in *Speidel*, we relied upon *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), where the United States Supreme Court noted that[, when] dealing with one of the "larceny-type offenses"[,] courts have historically emphasized an intention to wrongfully deprive.... However, when speaking of the requisites of a general criminal intent as applied to all crimes, the Supreme Court did not emphasize a specific awareness of wrongfulness. Instead, the Court approved more general definitions of the required mental element[.]
>
> ....
>
> When one considers *Speidel* and *Morissette*, it is apparent that those cases deal with the necessity of basing serious crimes upon a general criminal intent as opposed to strict criminal liability which applies regardless of intention. The goal of these cases is to avoid criminal liability for innocent or inadvertent conduct. The use of the phrase "awareness of wrongdoing" ... does not mean a person must be aware that the conduct he is committing is specifically defined as a wrongful act. Nor does it mean that a person must know an act is proscribed by law....
>
> ....
>
> [A]s applied to crimes generally, what is imperative is that an accused's act be other than simply inadvertent or neglectful. What is essential is not an awareness that a given conduct is a "wrongdoing" in the sense that it is proscribed by law, but rather an awareness that one is committing the specific acts which are defined by law as a "wrongdoing". It is ... no defense that one was not aware his acts were wrong in the sense that they were proscribed by law. So long as one acts intentionally, with cognizance of his behavior, he acts with the requisite awareness of wrongdoing. In the words of Justice Holmes:
>
> > If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent.
>
> *Ellis v. United States*, 206 U.S. 246, 257, 27 S.Ct. 600, 602, 51 L.Ed. 1047, 1053 (1907).

*Alex*, 484 P.2d at 680–82 (citations omitted). The supreme court then held that, if Alex intentionally walked away from the Palmer correctional camp, aware that he was leaving the camp, he acted with sufficient "awareness of wrongdoing" to support his felony conviction. *Alex*, 484 P.2d at 682.

The next case in this series is *Kimoktoak v. State*, 584 P.2d 25 (Alaska 1978). In *Kimoktoak*, the supreme court held (with hardly any discussion) that Alaska's hit-and-run statute, AS 28.35.060, would be unconstitutional unless it were interpreted to include an element of *scienter*. That is, the court held that a defendant can be convicted of failing to remain and render assistance at the scene of an accident only if the government proves that the defendant knew that there had been an accident. *Id.* at 29–30. Explaining its ruling, the supreme court stated: "In *Speidel*, . . . [w]e rejected the notion that mere inadvertent or unwitting failure to perform a legal duty could constitute a felony[.]" *Kimoktoak*, 584 P.2d at 29.

█ This encapsulation of the *Speidel* rule is instructive. In both *Speidel* and *Kimoktoak*, defendants faced felony liability for an omission—failing to perform an act required by law. In *Speidel*, the defendant had failed to return a rental car; in *Kimoktoak*, the defendant had failed to stop and render aid at the scene of an accident. The result in both cases can be explained by the rule that, when criminal liability is predicated on a person's failure to perform an act required by law, the government must at a minimum show (1) that the defendant was aware of the circumstances that created the legal duty to act, and (2) that the defendant voluntarily refrained from performing the act. Or, in the words of *Kimoktoak*, the "mere inadvertent or unwitting failure to perform a legal duty [can not] constitute a felony". *Kimoktoak*, 584 P.2d at 29.

In *Speidel*, the defendant car-renter was presumably aware of the circumstances giving rise to the legal duty to return the car, but the statute did not require proof that the defendant had voluntarily refrained from returning the car. The supreme court remedied this deficiency by calling for the govern-

ment to prove that the defendant's failure to return the car was motivated by an intent to appropriate the car to his own use or impair the property interest of the owner.[7] In *Kimoktoak*, the problem was that the statute apparently did not require the motorist to be aware of the circumstances giving rise to the duty to remain at the scene; that is, the statute did not explicitly require proof that the driver was aware that an accident had occurred. *Kimoktoak*, 584 P.2d at 31–33. See W. LaFave and A. Scott, *Substantive Criminal Law* (1986), § 3.3(b), Vol. 1, pp. 289–290:

> Though one might otherwise be under a duty to act, so that omission to do so would ordinarily render [one] criminally liable, the prevailing view is that [one] may not be held liable if [one] does not know the facts indicating a duty to act. Thus, . . . most courts have taken the view that one may not be convicted under a hit-and-run statute if [one] was unaware of the fact that an accident has occurred.

This same rule explains the supreme court's decision in *Hentzner v. State*, 613 P.2d 821 (Alaska 1980). In *Hentzner*, the defendant was convicted of selling unregistered securities. The gist of the crime was again the defendant's failure to perform an act required by law—registering the securities before offering them to the public. The supreme court ruled that, in the context of selling unregistered securities,

> [c]onsciousness on the part of the actor that he is doing the act does not carry with it an implication that he is aware that what he is doing is wrong. In such cases, more than mere conscious action is needed to satisfy the criminal intent requirement. . . . Thus, criminal intent in the sense of consciousness of wrongdoing should be re-

---

7. *See also State v. Campbell*, 536 P.2d 105 (Alaska 1975), *overruled on other grounds* in *Kimoktoak v. State*, 584 P.2d at 31. In *Campbell*, the defendant was convicted of violating former AS 11.20.260, a "retention of lost property" statute that made it a crime for a person to keep lost property he or she had found unless the finder either advertised the discovered property in a newspaper of general circulation or apprised the local police of the discovered property. 536 P.2d at 105. Thus, the gist of the offense was the defendant's failure to give public notice of the discovery in either of the two ways listed in the statute. The supreme court held that this statute was unconstitutional because it did not require the government to prove that the defendant's failure to take the required action was motivated by an intent to deprive the owner of the property. 536 P.2d at 110, 113.

garded as a separate element of the offense[.]

*Hentzner,* 613 P.2d at 826.

As the supreme court's decision in *Guest* demonstrates, the due process concept of "consciousness of wrongdoing" applies to a broader range of crimes than simply crimes of omission. However, the foregoing discussion points out the difference between Steve's case and the *Speidel, Kimoktoak,* and *Hentzner* cases. The defendants in in *Speidel, Kimoktoak,* and *Hentzner* all faced criminal penalties because they failed to perform an act required by law. Steve, on the other hand, like the defendant in *Alex,* was charged with a general intent crime—voluntarily committing an affirmative act. In prosecutions for general intent crimes, the requirement of "consciousness of wrongdoing" does not require proof that the defendant knew he or she was violating a legal prohibition. To reiterate what the supreme court said in *Alex,*

> [A]s applied to crimes generally, what is imperative is that an accused's act be other than simply inadvertent or neglectful. What is essential is not an awareness that a given conduct is a "wrongdoing" in the sense that it is proscribed by law, but rather an awareness that one is committing the specific acts which are defined by law as a "wrongdoing". It is … no defense that one was not aware his acts were wrong in the sense that they were proscribed by law. So long as one acts intentionally, with cognizance of his behavior, he acts with the requisite awareness of wrongdoing.

*Alex,* 484 P.2d at 681–82.

Steve's act of sexual intercourse with E.W. was not "simply inadvertent or neglectful"; it was a knowing and voluntary act. E.W. was under 16 years old at the time. Under the traditional law of rape, these two elements were sufficient to establish Steve's guilt.

In *Guest,* the supreme court held that "[a] charge of statutory rape is legally unsupportable … unless a defense of reasonable mistake of age is allowed". 583 P.2d at 838–39. If these words are read at face value, the supreme court did not alter the elements of the crime; instead, the court recognized a new defense. That is, the court held that even if the government proved the elements of the crime, a defendant must still be allowed to raise the defense of reasonable mistake of age. As we noted above, this interpretation of *Guest* is supported by the supreme court's approving citation of AS 11.-41.445(b) and the statutes from Arkansas, Montana, and Washington. All of these statutes recognize a mistake-of-age defense, but they all allocate the burden of proof to the defendant—a result that would not be constitutional if the defendant's awareness of the victim's age were an element of the offense.

We do not believe that society's basic notions of justice and fairness are violated when the law imposes criminal liability on a defendant (1) who has sex with an under-age child, (2) who claims that he or she made a mistake concerning the victim's age, but (3) who can not show that the mistake was a reasonable one. The Alaska legislature has declared that people must not have sexual relations with children younger than 16. Human beings generally exhibit visible signs of their age. While it may not be possible to determine people's exact ages from looking at them and talking to them, in most instances it is possible, using these indicators, to identify 13–, 14–, and 15–year–olds as still being in their teens. Accordingly, it is fair to expect people to exercise caution when choosing a youthful sexual partner. And, if the defendant claims that a mistake was made, it is fair to expect the defendant to prove the reasonableness of that mistake—to prove that the mistake was not the result of intoxication, lack of concern, or other unreasonable behavior.

We thus reject Steve's argument that *Guest* altered the elements of statutory rape (now codified as sexual abuse of a minor). Instead, *Guest* declares that reasonable mistake of age must be allowed as a defense to the crime. Because the defendant's belief concerning the victim's age is a matter of defense, not an element of the crime, the legislature can constitutionally allocate the burden of proof where it sees fit, in light of

the societal interests involved. We therefore hold that AS 11.41.445(b) is constitutional.[8]

### 3. Sentencing Issues

■ We now turn to Steve's arguments relating to his sentencing. Steve first challenges the pre-sentence report prepared by the Department of Corrections.

On October 1, 1992, Judge Jeffery ordered the Nome probation office to prepare an updated pre-sentence report on Victor Steve, to supplement the one prepared from Steve's prior offense. Probation Officer Stephen D. Korenek, who had prepared the pre-sentence report on Steve in 1984, was assigned to prepare the updated report. In this updated report, Korenek urged the superior court to impose the maximum term of imprisonment.

On January 8, 1993, Steve filed, *pro se*, a document entitled "statement of defense" in which he urged the court not to consider Korenek's pre-sentence report. Steve argued that Korenek had "fashioned his pre-sentence report with a personal ill will". Steve attached a copy of a federal civil rights complaint in which he had named Korenek as a defendant. Although Steve had dismissed this complaint in October, 1992, he argued that the complaint had engendered a continuing bias in Korenek.

At Steve's sentence hearing, Korenek testified that he had learned of Steve's civil rights suit in early 1992. An attorney in the Department of Law had assumed the defense of the lawsuit, and this attorney informed Korenek that the State would indemnify him in the event that a judgement was entered against him.

Moreover, according to Korenek, he had spoken with Steve during his preparation of the pre-sentence report, and Steve had expressed no reservations about Korenek's role in the preparation of the report. Korenek declared that the civil lawsuit had not affected his preparation of the pre-sentence report.

Based on this testimony, Judge Jeffery rejected Steve's challenge to Korenek's prep-

aration of the pre-sentence report. First, Judge Jeffery concluded that "the issue had been waived by the failure of the defense to bring it up in a timely manner". Second, Judge Jeffery found that Steve's challenge to the pre-sentence report was a "manipulation of the system to try ... to remove the experienced people from consideration of the case". Finally, Judge Jeffery concluded that Steve's lawsuit had not affected Korenek's preparation of the pre-sentence report. For these reasons, Judge Jeffery ruled that "the report [was] properly prepared by ... Korenek".

The question on appeal is whether Judge Jeffery abused his discretion when he accepted and relied on Korenek's pre-sentence report. We note that the facts of this case strongly suggest that Steve waived this issue by failing to raise it in a timely fashion. Steve knew that Korenek was assigned to write the report; he personally met with Korenek during the preparation of the report. Steve did not object to Korenek's preparation of the report until Steve discovered that Korenek had recommended the maximum sentence. *Compare Johnson v. State*, 739 P.2d 781, 784 (Alaska App.1987) (a defendant who appeared with counsel, entered a plea, and was sentenced by a judge, all without objection, waived his right to later seek reversal of his conviction and sentence by challenging the judge for cause).

Moreover, even if Steve preserved this issue, we conclude that Judge Jeffery did not abuse his discretion. Korenek testified that he had been assured by the Department of Law that he would be indemnified by the State for any judgement against him. He further testified that he paid little attention to the lawsuit, and he declared that the lawsuit had not affected his preparation of the pre-sentence report. Judge Jeffery found this testimony to be credible, and that finding is not clearly erroneous. Moreover, Steve has not pointed to any statements in the pre-sentence report that he believes are purposely inaccurate or unfairly slanted against him. We therefore conclude that

---

**8.** AS 11.41.445(b) also provides that a mistake-of-age defense is not available when the victim was younger than 13 at the time of the offense. Steve's case does not involve the constitutionality of this provision, and we do not decide it.

Judge Jeffery did not abuse his discretion when he rejected Steve's challenge to the pre-sentence report.

■ Steve's next sentencing argument concerns Judge Jeffery's rejection of a proposed mitigating factor. Steve was subject to presumptive sentencing because he was a third felony offender convicted of second-degree sexual abuse of a minor, a class B felony. AS 11.41.436(b). He therefore faced a presumptive term of 6 years' imprisonment. AS 12.55.125(d)(2).

Steve's prior felonies were from 1984, when he was convicted of two counts of second-degree sexual abuse of a minor for sexually abusing his eight-year-old daughter. Steve received a composite sentence of 10 years' imprisonment with 4 years suspended (6 years to serve). This sentence was affirmed on appeal: see Steve v. State, Memorandum Opinion No. 868 (Alaska App., June 26, 1985).

At his sentencing in the present case, Steve contended that his offense was mitigated because his conduct was among the least serious included in the definition of second-degree sexual abuse of a minor, a mitigator under AS 12.55.155(d)(9). Judge Jeffery rejected this statutory mitigating factor, making the following findings:

> I find [that] this [mitigator] has not been shown by clear and convincing evidence.... [T]aking all the surrounding circumstances, the great age difference [between Steve and his victim], the involvement of alcohol, ... Mr. Steve's status as someone being on felony probation for the exact same offense—all of that would prevent me from finding [that Steve's offense] is among the least serious, even if [the victim] had gone in there [totally] consensually[.] The fact that ... she, in fact, was somewhat forcefully taken back to the bedroom certainly prevents me from saying this is among the least serious.

Steve argues that the facts of this case indicate that the victim sought him out and refused to leave his residence. Steve also argues that the victim actively deceived Steve into believing that she was sixteen.

However, these assertions depend on a view of the facts most favorable to Steve. As a reviewing court, we must view the facts in the light most favorable to upholding Judge Jeffery's ruling, and we must affirm the superior court's finding unless it is shown to be clearly erroneous. Degler v. State, 741 P.2d 659, 661 (Alaska App.1987).

As Judge Jeffery noted, Steve furnished his victim with alcohol, encouraged her to become intoxicated, and then led her into the bedroom and removed her clothes. Steve was 53 years old at the time of the offense, much older than his 15–year-old victim. For these reasons, Judge Jeffery was not clearly erroneous when he concluded that Steve's conduct was not among the least serious included in the definition of the offense.

■ Steve also asked Judge Jeffery to refer his case to the three-judge sentencing panel, both because the 6–year presumptive term was manifestly unjust and because of Steve's asserted extraordinary prospects for rehabilitation. Judge Jeffery rejected this request. Noting that Steve had sexually abused the minor in this case even after serving 6 years in prison for a prior sexual abuse of a minor conviction, Judge Jeffery concluded that the 6–year presumptive term was not manifestly unjust. And, based on the information in the pre-sentence reports (both the 1984 report and the updated report), Judge Jeffery concluded that, far from being extraordinary, Steve's prospects for rehabilitation were "very guarded". Judge Jeffery's conclusions are amply supported by the record, and we affirm them.

Steve's final argument is that his composite sentence is excessive. Judge Jeffery found that the State had proved four aggravating factors under AS 12.55.155(c). These were: (c)(5)—that Steve had known that his victim was particularly incapable of resistance due to her intoxication; (c)(18) and (c)(21)—that Steve had previously been convicted of sexually abusing a minor, the same crime for which he was now being sentenced; and (c)(20)—that Steve had been on probation from this prior felony when he committed the present offense. These aggravating factors authorized the court to impose a sen-

tence exceeding the 6–year presumptive term. AS 12.55.155(a)(2).

Judge Jeffery concluded that, based on these aggravating factors, the 6–year presumptive term should be adjusted upward:

> [T]he presumptive term of six years, which is already pretty severe, is going to go a long way [toward deterring yourself and others]. However, I do feel that some upward adjustment is needed because of the fact that, ... unfortunately, there was already a six-year term, and then we have this new offense. I am not going to make a worst offender finding at this time though, and I do not intend to impose a maximum term. But, still, some upward adjustment ... is necessary to bring it home to both you and others that when you've got two prior sexual abuse of a minor in the second degree [convictions], to be doing this kind of activity while you're on probation again is just asking for some major consequences.

Judge Jeffery then sentenced Steve to 10 years' imprisonment with 3 years suspended (7 years to serve).

In addition, Judge Jeffery revoked Steve's probation from his prior felony, ordering Steve to serve the 2 years remaining from that conviction. Judge Jeffery also ordered these two sentences to run consecutively. Thus, Steve received a composite sentence of 12 years' imprisonment with 3 years suspended (9 years to serve).

█ On appeal, Steve cites *Lacquement v. State,* 644 P.2d 856, 862 (Alaska App.1982) for the contention that such a sentence could not be imposed without an express finding that it was based on the need to protect the public. This is wrong. First, *Lacquement* dealt with a situation in which, due to the absence of aggravating factors, the trial court lacked the authority to impose more than the presumptive term for the defendant's current felony. Second, *Lacquement* has been modified; now any good cause suffices to justify a composite sentence above the presumptive-term benchmark. *See Farmer v. State,* 746 P.2d 1300, 1301–02 (Alaska App.1987); *Jones v. State,* 744 P.2d 410, 411–12 (Alaska App.1987).

The rule that potentially applies to Steve's case is the *Mutschler* rule, *Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977), that a defendant can receive a composite sentence exceeding the maximum term for his or her single most serious offense only when such a sentence is justified by the need to protect the public. But the maximum term for Steve's offense is 10 years' imprisonment, while Steve received a composite term of only 9 years to serve. AS 12.55.125(d).

Steve's current offense was aggravated. Moreover, he committed his current offense after serving a substantial prison term for the same crime and while he was still on probation from that prior offense. Having examined the record, we do not find that Judge Jeffery was clearly mistaken in sentencing Steve to a composite term of 12 years' imprisonment with 3 years suspended. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The judgement of the superior court is AFFIRMED.

BRYNER, C.J., not participating.