STATE of Alaska, Appellant,

v.

Andrei MARTUSHEV, Appellee.

No. A–4003.

Court of Appeals of Alaska.

Feb. 5, 1993.

Joseph N. Levesque, Asst. Dist. Atty., Kenai, and Charles E. Cole, Atty. Gen., Juneau, for appellant.

Robert Merle Cowan, Law Offices of Cowan & Gerry, Kenai, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Andrei Martushev was charged with fishing commercially in closed waters. District Court Magistrate Lynn H. Christensen dismissed the prosecution, ruling that the emergency order Martushev allegedly violated provided inadequate notice of its effective boundary. The state appeals, and we reverse.

Fishing is a strictly regulated activity in Alaska; AS 16.05.920(a) prohibits the taking of fish except as permitted by statute or regulation. The open season for commercial drift gill net fishing of salmon in the Upper Subdistrict of the Central District of the Cook Inlet Area is defined by regulation at 5 Alaska Administrative Code (AAC) 21.310(2)(B). The open season is

further broken down into weekly fishing periods by 5 AAC 21.320(b):

In the drift gill net fishery

(1) salmon may be taken in the Central District from 7:00 a.m. Monday until 7:00 p.m. Monday and from 7:00 a.m. Friday until 7:00 p.m. Friday ...;

(2) the fishing periods set forth in (1) of this subsection may be modified by emergency order[.]

On Friday, July 20, 1990, the Department of Fish and Game, finding that an excessive amount of salmon warranted extending the weekly fishing period in a limited area for a limited time, issued Emergency Order 2S–09–90, which temporarily extended the opening for "that portion of the Upper Subdistrict [of the Central District] south of the latitude of Collier's Dock...." Neither the emergency order nor any statute or regulation specified the actual latitude of Collier's Dock, although the Department had used the dock as a boundary landmark for two years.

At a bench trial, Alaska State Trooper Kenneth Merrill testified that he was patrolling Cook Inlet during the early morning hours of Saturday, July 21, to ensure that Emergency Order 2S–09–90 was not being violated. At about 5:40 a.m., Merrill observed Martushev's vessel, the Sea Zone, fishing north of Collier's Dock. Merrill took several photographs of the boat, which were admitted into evidence. In three of the photographs, a pier, which Merrill identified as Collier's Dock, is visible in the background beyond Martushev's boat, and light from the early morning sun is visible to the left; therefore, Merrill testified, the *photographs show that Martushev was fishing north of Collier's Dock.*

Merrill testified that another officer, Trooper Robert Lester, took loran (long-range navigation) readings to confirm the Sea Zone's location. Merrill testified that these readings showed that Martushev was at latitude 60°41′25″ N., which was 1.1 miles north of the Collier's Dock boundary line. Merrill also testified that the most

recent set latitude written in Martushev's log on board his vessel was latitude 60°40′74″ N., a location about one-half mile north of the Collier's Dock line. On cross-examination, Merrill testified that he did not know the latitude of Collier's Dock without looking up the figure. However, the complaint form that Merrill filled out specified the dock's location as latitude 60°40′25″ N. The state also sought unsuccessfully to enter into evidence a chart of the United States Cook Inlet Drift Association that gave the same figure as the latitude of "Collier Pier," but Magistrate Christensen ruled that the chart was not relevant because Martushev was not a member of the association. Merrill also admitted on cross-examination that Martushev's open and cooperative behavior on the morning of July 21 was "consistent" with Martushev not having known where the boundary was and not having known he was north of it.

At the conclusion of Merrill's testimony, Martushev moved to dismiss the case because the emergency order did not identify the specific latitude of Collier's Dock. Although he conceded that the correct boundary was latitude 60°40′25″ N., Martushev argued that:

since that was not clearly articulated in the opening order there, that the order as to what the northern boundary was in this matter is void for vagueness. It would have simply been easy to have stated the latitude instead of talking about Collier's Dock, because that makes an assumption that everybody knows which dock is which dock up there, and that's not necessarily true.

The prosecutor argued in response that specifying the exact latitude was not required for a strict liability offense,[1] that the language of the emergency order was clear, and that "most fishermen are assumed to have knowledge of the sea, and knowledge of regulations, and areas that are open and closed. They shouldn't be fishing if they don't."

---

1. The state had elected to seek strict liability commercial fishing penalties under AS 16.05.- 722 and 5 AAC 39.002.

Magistrate Christensen granted Martushev's motion to dismiss:

The court will first note that in other regulations in the Administrative Code, for instance 5 AAC 21.330—I have not been asked to take judicial notice of any other regulation, but I will note that in that regulation at least, when a landmark is referred to, it is generally given in the latitude and a longitude of that mark. I've not been able to find anything in the surrounding statutes that refers to Collier's Dock.

The state having an opportunity to respond to defendant's motion for vagueness may have been able to overcome that motion by presenting evidence to the court that there is some navigational device, for instance, a chart that is put out by the U.S. Coast Guard, that would refer to Collier's Dock as a normal navigational aid. The court has no idea if any such evidence exists, but as this regulation is written and based on the evidence and the record of this proceeding, the court does find that the emergency order is vague. And I'm going to grant the defendant's motion to dismiss for vagueness.

And I will comment that this is not the first emergency order regulation that this court has found vague because of the description. And I agree with [defense counsel], it would have been fairly easy for Fish and Game, who promulgates these emergency orders, to put the latitude and longitude in there. And absent any showing that it is a common navigational aid, I grant defendant's motion to dismiss the charge.

■ On appeal, the state argues that Magistrate Christensen erred in dismissing the case. Before addressing the merits of the state's claim, however, we must decide whether the state is entitled to an appeal under these circumstances. The state ordinarily has no right of appeal in criminal cases except to test the sufficiency of the indictment, information, or complaint.[2] AS

22.07.020(d)(2); Alaska R.App.P. 202(c); *Kott v. State*, 678 P.2d 386, 389 (Alaska 1984).

Martushev argues that the state has no right to appeal under the circumstances of this case, because it seeks to test the sufficiency of the emergency order on which the complaint is based, rather than the sufficiency of the complaint itself. In support of this argument, Martushev points out that the complaint against him, unlike the emergency order, is not vague, since it specifies that the effective boundary of the area open to fishing is latitude 60°40′25″ N.

■ Testing the "sufficiency" of an indictment, however, is not limited to contentions that the indictment is insufficient on its face. For example, the state may appeal to test the sufficiency of the evidence to support the indictment or the legality of the procedures used to secure the indictment. *Kott*, 678 P.2d at 389 n. 4. The state may also appeal when a trial court dismisses a complaint after ruling that the underlying statute or ordinance does not apply to the facts alleged in the complaint. *State v. Straetz*, 758 P.2d 133, 134 n. 1 (Alaska App.1988); *Anchorage v. Lloyd*, 679 P.2d 486, 486 n. 1 (Alaska App.1984). We conclude that the state may appeal from a trial court order dismissing a case on the ground that the underlying regulation is unconstitutionally vague. *Cf. State v. Allen*, 304 N.W.2d 203, 205–06 (Iowa 1981) (state could appeal as of right from dismissal for vagueness after trial). An appeal from such a dismissal will not violate the double jeopardy clauses of the federal or state constitutions even when the defendant moved for dismissal after trial had begun. *Selman v. State*, 406 P.2d 181, 186–87 (Alaska 1965), *overruled on other grounds, Whitton v. State*, 479 P.2d 302, 312 (Alaska 1970).

Martushev nevertheless argues that Magistrate Christensen did not simply dismiss this case because the emergency order was unconstitutionally vague, but in effect granted a judgment of acquittal be-

---

**2.** The state also has the right to appeal a sentence as too lenient; this limited appellate right, however, is not germane here.

cause the state produced insufficient evidence that Martushev fished beyond the boundary vaguely described in the emergency order. We disagree with Martushev's characterization of the dismissal order.

When "the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged," that ruling is a judgment of acquittal; appellate review is not permitted under AS 22.07.020(d)(2) and is affirmatively barred by double jeopardy. *State v. Thronsen*, 809 P.2d 941, 943 (Alaska App. 1991) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977)). Conversely, when a court orders dismissal on legal grounds that do not require resolution of the factual elements of an offense, the order does not amount to a judgment of acquittal, regardless of its timing or the label attached thereto. *Cf.* Alaska R.Crim.P. 12(b) (empowering the court to adjudicate, prior to trial, "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue"); *State v. Hebert*, 803 P.2d 863, 868–69 (Alaska 1990) (a trial defense based on invalidity of regulation upon which prosecution is based would, if established, render complaint invalid and warrant a dismissal).

In this case, the trial court's order of dismissal contains language suggesting that the court may have weighed or considered some of the evidence at trial in making its ruling. Magistrate Christensen stated that he based his decision on "the evidence and the record of this proceeding" and the fact that the state had presented no evidence to the court showing that Collier's Dock was a common navigational aid.

Beyond noting the lack of evidence to refute Martushev's claim of vagueness, however, Magistrate Christensen made no finding or decision implicating the factual

elements of the offense charged: the magistrate did not find the evidence insufficient to convict Martushev of being north of Collier's Dock and outside the open fishing area, nor did the magistrate purport to acquit Martushev on that ground.[3]

Martushev conceded below that Collier's Dock is actually located at latitude 60°40'25" N.; he nevertheless contended that, because this information was not specified in the emergency order and was otherwise unavailable to him, he could not reasonably have been expected to know where the boundary line was. This appears to have been the sole ground upon which Magistrate Christensen dismissed Martushev's case. We therefore turn to the merits of this appeal.

Due process requires that a Fish and Game emergency order not be stated "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Fishing Vessel American Eagle v. State*, 620 P.2d 657, 665 (Alaska 1980) (quoting *Stock v. State*, 526 P.2d 3, 8 (Alaska 1974)), *appeal dismissed*, 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982). Martushev contends that Emergency Order 2S–09–90 was vague because, by omitting the latitude of Collier's Dock, the order failed to provide adequate notice to ordinary citizens of the conduct it prohibited.

In support of this argument, Martushev alleges that there is no publication, map, statute, or administrative code provision specifying the exact location of Collier's Dock and that the area "south of the latitude of Collier's Dock" is not well-known or clearly marked. Martushev also points out that Merrill did not know the latitude or longitude of Collier's Dock, that the landmark boundary has been in use for only two years, and that there are other companies with docks along that area of the shore.

**3.** In contrast, the supreme court in *Casey v. State*, 509 P.2d 285, 286 & n. 2 (Alaska 1973), noted that a statute prohibiting possession of a drug having "similar physiological effects" to the drugs listed in the statute might be unconstitutionally vague for lack of notice but did not reach that issue, holding instead that there was no evidence at trial that defendant's drug did in fact have "similar physiological effects" to the listed drugs and reversing the conviction on that basis.

However, Martushev made no effort below to substantiate his assertion that the location of Collier's Dock was incapable of being readily ascertained. Instead, Martushev sought to turn the tables on the prosecution, claiming that the state had failed to prove that he should have been aware of the dock's location. In ordering dismissal, Magistrate Christensen accepted Martushev's approach to the vagueness issue, in effect deciding that an emergency order naming a landmark without also giving its geographic coordinates is presumptively invalid unless the state shows that the landmark is a normal or common navigational aid.

■ This approach is incorrect as a matter of law, for it subverts the usual rule that places the burden of establishing a claim squarely on the shoulders of the claim's proponent. To establish vagueness, it was not sufficient for Martushev to show that the Department of Fish and Game could have done better—that it could have described the disputed boundary with greater clarity by specifying the latitude of Collier's Dock. Rather, as we have already indicated, Martushev was required to show that the emergency order's description was "so vague that men of common intelligence *must necessarily guess at its meaning* and differ as to its application." *Fishing Vessel American Eagle v. State*, 620 P.2d at 665 (emphasis added).

In order to carry this burden, Martushev was obliged "to prove, in addition to showing [that] information concerning the law was not made reasonably available, that he made reasonable efforts to act lawfully and that he subjectively did not know that his conduct was criminal and believed that there was 'no risk of criminality.'" *Shet-*

*ters v. State*, 832 P.2d 181, 183 (Alaska App.1992).

In *Shetters*, the defendant contended that the local option statute allowing communities to prohibit the importation of alcohol violated constitutional due process because neither the statute nor any published law or regulation gave notice of the specific communities that had prohibited such importation. We rejected this challenge, noting that Shetters had not established that he had made reasonable inquiries into whether his conduct was permitted or that he had actually believed his conduct was legal. *Id.*

In this case, Martushev has not shown that the latitude of Collier's Dock was unpublished, that he made reasonable efforts to learn the latitude of Collier's Dock, or that he subjectively and reasonably believed there was no risk that he was north of it. To prevail on his motion for dismissal, the burden was on Martushev to establish these facts, not on the state to rule them out.[4]

■ Placing the burden on Martushev to substantiate his claim of vagueness is particularly appropriate in light of the nature of the emergency order that he challenges. The need for clarity in a statutory or regulatory provision is greatest when the provision is one that restricts activities in which a broad range of citizens would ordinarily engage. Optimal clarity is necessary in the case of such a provision, since the risk of innocent citizens committing unintentional violations is particularly high. Emergency Order 2S–09–90, however, did not address itself to a broad group of ordinary citizens, nor did it seek to restrict a generally permitted activity. To the contrary, the emergency order was directed at a limited group

---

4. *Wacek v. State*, 530 P.2d 751 (Alaska 1975) (*per curiam*), provides a useful contrast to the present case. In *Wacek*, the supreme court reversed the defendant's conviction for discharging a firearm in a public park based on facts stipulated by the parties: that no signs marked the boundaries of the park, that no information either published or provided to hunters showed the location or even mentioned the existence of the park, and that the defendant had promptly sought a trooper and reported the shooting when a passer-by informed him the area was

closed. The court held that, "given *all* the facts stipulated," it had "no difficulty" in concluding that the state had given inadequate notice of the boundaries of the area in which discharging a firearm was prohibited. *Id.* at 753 & n. 2. The parties had essentially stipulated that an objectively reasonable defendant could not have been expected to know the location where conduct was illegal and that the particular defendant had acted in subjective good faith. Martushev has not established any similar facts in this case.

of persons participating in the commercial fishing industry, and it authorized a limited scope of commercial fishing activity that would otherwise have been prohibited.

At least two factors diminish the need for concern with optimal clarity under these circumstances. First, given the commercial and closely regulated nature of the activity that the challenged emergency order deals with—commercial fishing—participants in the activity can properly be held to a higher standard of compliance than might be appropriate for ordinary citizens. Second, the very act of taking advantage of permission—limited in time and place—to engage in otherwise forbidden activity carries with it a commensurate duty to make reasonable efforts to determine the effective scope of the permission.

 In the present case, it would have been palpably unreasonable for Martushev, a commercial fisherman, to assume that the emergency order's failure to specify a precise latitude for Collier's Dock left him free to drop his nets anywhere he chose.

*Cf. State v. Eluska,* 724 P.2d 514, 515 (Alaska 1986) (given general statutory provision prohibiting all hunting unless expressly authorized, agency's failure to promulgate appropriate subsistence regulations did not permit unregulated subsistence hunting). Absent affirmative proof that he did not know and could not have learned, through reasonable inquiry, the location of Collier's Dock, Martushev should not have been allowed to prevail on his vagueness claim. We conclude that the district court erred in dismissing Martushev's case without requiring such a showing.

We REVERSE the order of dismissal and REMAND the case for further proceedings consistent with this opinion.