MUNICIPALITY OF ANCHORAGE,
Appellant,

v.

Clyde BAXLEY, Linda Weatherholt,
Jeff Ullom, and Heather Siegel,
Appellees.

No. A–6420.

Court of Appeals of Alaska.

Oct. 16, 1997.

Order Denying Rehearing Nov. 19, 1997.

Thane R. Mathis, Assistant Municipal Prosecutor, and Mary K. Hughes, Municipal Prosecutor, Anchorage, for Appellant.

Bradley K. Leutwyler, Leutwyler, Brion & Associates, Anchorage, for Appellee Baxley.

Heather Siegel, pro se.

No appearance for Appellees Weatherholt and Ullom.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

### OPINION

COATS, Chief Judge.

The Municipality of Anchorage prosecuted Clyde Baxley, Linda Weatherholt, Jeff Ullom, and Heather Siegel for speeding in a school zone, Anchorage Municipal Ordinance §§ 09.26.020 or 09.26.030.C. Each of the defendants was issued a citation based on a reading obtained from a photo-radar machine. On July 31, 1996, the municipality and the defendants appeared at a hearing before District Court Magistrates Geoffrey T. Comfort, Ron Wielkopolski, and Roy V. Williams. The magistrates, sitting jointly, heard the municipality's case against all four defendants. In its presentation, the municipality focused on proving that photo-radar was an accurate and reliable method for ascertaining and recording the speed of a motor vehicle.

Following three days of evidence and arguments, the magistrates took the case under advisement. Two months later, the magistrates issued a joint decision finding all the defendants not guilty. The magistrates first stated that, absent independent corroboration, radar results are not admissible. The magistrates next concluded, in the alternative, that even if photo-radar evidence were admissible, the evidence presented by the municipality at the hearing failed to convince the magistrates of the four defendants' guilt.

The municipality now appeals the magistrates' decision. The municipality argues that photo-radar results are admissible without independent corroboration. However, as explained below, we conclude that this issue is moot because of the magistrates' second conclusion: their conclusion that, even with the photo-radar results, the municipality's evidence at trial did not convince the magistrates of the defendants' guilt, and thus the defendants were entitled to a verdict of acquittal.

The municipality next asserts that, even though the magistrates may have acquitted

the defendants after a trial based on the facts of the case, the municipality is entitled to seek appellate review of the magistrates' decision. The municipality argues that such review is not barred by the double jeopardy clause because traffic offenses are not "offenses" for purposes of double jeopardy. We conclude that we need not decide this issue because, even assuming that the municipality is entitled to seek appellate review of the magistrates' verdicts, there is no reversible error in the verdicts. We therefore affirm the judgments of acquittal entered by the district court.

At the outset, we confront the municipality's assertion that the three-day hearing in front of the magistrates was only an evidentiary hearing, not a trial on the merits. To answer this assertion, we believe it necessary to detail the evidence presented at the hearing.

Before the hearing, the municipality made a motion asking the court to take judicial notice of a report from the National Cooperative Highway Research Program setting out nationwide practices on the photographic enforcement of traffic laws. The magistrates granted this motion at the beginning of the hearing.

The first prosecution witness at the hearing was Augie Henry, an administrative officer for the Anchorage Department of Public Works. Henry testified about the process used by the Municipality of Anchorage to adopt and to contract out a system of photo-radar enforcement of speed limits; the contract was eventually awarded to American Traffic Systems (ATS), a private organization, in December 1995. Henry testified that although the municipality remained in control of the photo-radar program, ATS actually operated the program and received seventy percent of the amount of collected fines. Henry then described some of the administrative aspects of the photo-radar program.

Henry testified that he also had personally seen the photo-radar photographs and driver license photographs of Ullom, Weatherholt, and Siegel, and had signed their citations in his capacity as a peace officer; Henry visually identified the defendants in the courtroom and testified that, according to the data generated by PR–100 photo-radar units, they had been speeding at the indicated times and places (school zones) when the photographs were taken.

Jim Lovell, an employee of the State of Alaska, testified that he had tested the three PR–100 photo-radar units used by ATS with various tuning forks and had verified that all three of the photo-radar units accurately measured the tuning forks' simulated speeds and otherwise performed their operations and computations correctly.

John Warner, the general manager of ATS Alaska, testified that he had participated in the training of employees, in particular Edward Owens and Gary Evans, in the operation of the PR–100 photo-radar units. Owens and Evans testified that they were employees of ATS Alaska and had been trained to and did operate the PR–100 photo-radar units at the times Weatherholt, Siegel, and Ullom (Owens) and Baxley (Evans) were photographed speeding. Owens and Evans testified that although they set up the photo-radar machine and tested it with a tuning fork when first arriving at and again before leaving the monitoring scenes, the machine detected and photographed speeding vehicles automatically. Owens and Evans testified that although they did watch the flow of traffic, they had no part in personally deciding, verifying, or taking any notes regarding which or whether cars were speeding when they were photographed.

The municipality's next witness was Clint Davis, who designed the photo-radar unit, the PR–100. The court recognized Davis as a qualified expert in electrical engineering. Davis testified at length about the PR–100 photo-radar device. He testified that the PR–100 was designed to accurately measure the speed of vehicles and to photograph the speeding vehicles (as they approach and after they pass the photo-radar unit) and to print the speed and time onto the photographs. Using the photo-radar photographs of the defendants and using a measuring device, Davis testified that the PR–100 unit had been parked at the correct angle to accurately record Ullom, Siegel, Baxley, and Weatherholt. Davis testified that the PR–100 unit

was fully automatic in its operation and that, other than deployment and testing of the unit, the main role of the human operator was to ensure the machine was not vandalized and to reload film as necessary. He also testified about nineteen separate operations that the unit performs to ensure the PR–100's accuracy.

The municipality's next witness was Robert Davies, the director of field services for ATS. Davies had nearly twenty-five years' experience in traffic enforcement with the New Zealand police. New Zealand was one of the early (1993) customers of the PR–100 photo-radar. Davies testified that he had conducted extensive testing of the PR–100 units in New Zealand and that the units had performed well. He testified that the units were used by the New Zealand police, and in Riverside, California; Paradise Valley, Arizona; Ft. Collins, Colorado; and Commerce City, Colorado. Davies also, as had Davis earlier, measured the photo-radar photographs of the four defendants and confirmed that these measurements showed that the photo-radar unit had been parked at the proper angle and that the four defendants had been speeding as shown on the photo-radar photographs.

Jeff Ullom was the only defendant who testified at the hearing. Ullom testified that at the time he was cited for speeding, a time he could identify because of the flash from the photo-radar unit, his speedometer indicated that he was driving at the twenty-mile-per-hour speed limit in the school zone.

Two months after the hearing, the magistrates issued written findings and conclusions. In their decision, the magistrates referred to the hearing as the defendants' trial. The magistrates found that the scientific principles upon which photo-radar was based were well established and had attained general acceptance in the relevant scientific community.[1] However, the magistrates observed:

In stationary and moving radar trials in the State of Alaska, this court has required testimony by a trained police officer who is certified to operate the equipment. That officer has to first observe a speeding vehicle and formulate an opinion as to the speed of the vehicle before activating the radar. If the officer receives a reading consistent with his or her observations the officer will then pursue the vehicle and issue a citation. Radar is used as a corroborative device.

The magistrates found that the municipality's assertion that the photo-radar device accurately recorded the speeds of the defendant motorists rested on the testimony of Clint Davis and Robert Davies, witnesses the magistrates described as

individuals who have a great deal at stake financially and who will testify to whatever it takes to convince the court in a given case. Obviously a favorable decision by this court could be cited elsewhere and would be of great value to American Traffic Systems in fostering the growth of a market for its product. Thus, the pecuniary interest of Mr. Davis and Mr. Davies goes far beyond the Anchorage program and would appear to be so great as to call into question their objectivity when discussing their product. This is not the sort of testimony that persuades this court to find the PR100 evidence of speeding admissible. Moreover, were we to find this evidence admissible, the questionable reliability of the testimony renders it insufficient to sustain a conviction beyond a reasonable doubt in each of these cases. Accordingly, the court orders the cases against the above defendants dismissed.

The municipality appeals this decision.

■ The municipality asks us to reverse the magistrates' conclusion that photo-radar evidence is inadmissible without corroboration. However, that issue is moot. The magistrates decided in the alternative that, even if photo-radar evidence is admissible, the municipality still failed to establish the defendants' guilt beyond a reasonable doubt.

It seems clear from the record that the proceeding that took place in district court

1. This test for admission of novel scientific evidence is governed by *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), adopted in *Pulakis v. State*, 476 P.2d 474 (Alaska 1970). *See Harmon v. State*, 908 P.2d 434, 439 (Alaska App.1995).

was a trial. The magistrates' decision refers to the hearing as a trial, and the municipality appears to have put on its entire case against the defendants, including having them identified and attempting to establish that they were speeding on the dates and times in question. One of the defendants testified that he was not speeding. Furthermore, in ruling against the municipality, the magistrates concluded:

> This is not the sort of testimony that persuades this court to find the PR100 evidence of speeding admissible. Moreover, were we to find this evidence admissible, the questionable reliability of the testimony renders it insufficient to sustain a conviction beyond a reasonable doubt. Accordingly, the court orders the cases against the above defendants dismissed.

■■■ The government may not appeal an acquittal of a defendant after a trial (of a double-jeopardy "offense") because such an appeal would violate the defendant's right against double jeopardy. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354–55, 51 L.Ed.2d 642 (1977); *Steve v. State*, 875 P.2d 110, 115 (Alaska App.1994); *State v. Martushev*, 846 P.2d 144, 147–48 (Alaska App.1993). In determining whether the trial court's ruling was a judgment of acquittal, the appellate court "must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Martin Linen*, 430 U.S. at 571, 97 S.Ct. at 1355; *Martushev*, 846 P.2d at 148. "[D]ismissal on legal grounds that do not require resolution of the factual elements of an offense ... does not amount to a judgment of acquittal, regardless of its timing or the label attached thereto." *Martushev*, 846 P.2d at 148.

■■■ The municipality contends that the magistrates' ruling was not a judgment of acquittal because it did not "[represent] a resolution ... of some or all of the factual elements of the offense charged." The municipality points out that the magistrates never addressed whether any of the defendants drove above the posted speed limits at the time and place alleged. However, the municipality's case rested on the accuracy of the photo-radar unit. Once the magistrates found that they had a reasonable doubt about the accuracy of the photo-radar, the municipality did not have enough evidence to convict. The magistrates made a factual ruling that "the questionable reliability of the testimony [in support of photo-radar evidence] renders it insufficient to sustain a conviction beyond a reasonable doubt." This was an explicit finding that there was insufficient evidence at trial to prove the defendant's guilt beyond a reasonable doubt: in short, an acquittal based on the factual evidence.

The municipality argues that even if we find that the magistrates acquitted the defendants at trial, the double jeopardy clause does not preclude our review of acquittals for traffic infractions.[2] However, even if we accepted the municipality's argument, it would not lead to our reversing the decision of the magistrates.

■■■ Even assuming that we have the authority to review these acquittals, we would only review the magistrates' decision to determine whether the evidence presented would allow a reasonable fact finder to conclude that the municipality had failed to prove its case. Here, the municipality's case rested on the credibility of the photo-radar witnesses. The magistrates, who heard the witnesses testify, were in a much better position to determine their credibility than we are. In general, the credibility of witnesses is exclusively a question for the fact finder. *See Simpson v. State*, 877 P.2d 1319, 1320–21 (Alaska App.1994); *Daniels v. State*, 767 P.2d 1163, 1167 (Alaska App.1989). Given the magistrates' resolution of the witness

---

**2.** The municipality cites *Carlson v. State*, 676 P.2d 603 (Alaska App.1984), in which this court held that traffic violations were not double-jeopardy "offenses" for the purpose of precluding subsequent prosecutions for criminal offenses arising out of the same conduct. We have never decided whether the government may appeal from an acquittal of a traffic violation; courts from other jurisdictions are divided on the issue. Compare, *e.g., State v. Knoles*, 199 Neb. 211, 256 N.W.2d 873 (1977); *Commonwealth v. Walczak*, 440 Pa.Super. 339, 655 A.2d 592 (1995), *with Park Forest v. Fagan*, 64 Ill.2d 264, 1 Ill.Dec. 59, 356 N.E.2d 59 (1976).

credibility issue, a reasonable fact finder could have concluded that the municipality had failed to prove its case. Thus, even if we were to review the magistrates' verdicts, we would find no reversible error.

The judgments in this case are AFFIRMED.

## CORRECTED ORDER ON REHEARING

In our decision of this case (Opinion No. 1552, issued October 16, 1997), we ruled that the issue of the admissibility of photo radar evidence was moot. We reached that conclusion because the three magistrates, sitting as triers of fact at the defendants' trials, declared that the Municipality had failed to prove the defendants' guilt even if the photo radar evidence was taken into account.

In its petition for rehearing, the Municipality argues that the issue of photo radar is not moot because there are more than 3000 other traffic cases currently pending before the district court that raise the same issue. The Municipality's argument is based on a misunderstanding of the mootness doctrine.

■ An issue is moot when decision of the issue has ceased to be relevant to the resolution of the litigation before the court—when "it has lost its character as a present, live controversy". *Kleven v. Yukon–Koyukuk School District,* 853 P.2d 518, 523 (Alaska 1993). The present litigation concerns the Municipality's prosecution of the four defendants (Baxley, Weatherholt, Ullom, and Siegel) for speeding in a school zone. The three magistrates who acted as the triers of fact at the defendants' trial concluded that, even when the Municipality's photo radar evidence

was considered, the cases against the defendants were not proved. Given the magistrates' verdicts, it makes no to difference whether the magistrates were right or wrong when they ruled that the Municipality failed to present a sufficient evidentiary foundation for admission of the photo radar results. While the admissibility of photo radar evidence may affect the outcome of the 3000 cases waiting to be tried, it cannot affect the outcome of the present four defendants' cases. As far as this appeal is concerned, the issue is moot.

The municipality seeks rehearing on a second ground. For the first time, the Municipality argues that the government's burden of proof in a traffic prosecution is "preponderance of the evidence" rather than "beyond a reasonable doubt". The Municipality argues that the magistrates' verdicts in this case are flawed because the magistrates applied the "beyond a reasonable doubt" standard when they found the defendants not guilty.

■ Alaska law does not allow a party to raise a new argument in a petition for rehearing. *Booth v. State,* 903 P.2d 1079, 1090 (Alaska App.1995). The Municipality's failure to raise this point during the normal course of the appeal means that the point is waived.