NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MIA A., | ) | |
| | ) | Supreme Court No. S-14037 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-09-00059 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT* |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF HEALTH & | ) | No. 1408 - January 25, 2012 |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Randy M. Olsen, Judge.

Appearances: Josie Garton, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Michael G. Hotchkin, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices. [Christen, Justice, not participating.]

## I.     INTRODUCTION

The State Office of Children's Services (OCS) had custody of an 18-year-old developmentally disabled woman. OCS moved for her release from custody so that

---

\*     Entered pursuant to Alaska Appellate Rule 214.

she could move into an adult assisted-living facility.  The superior court considered OCS's motion on an expedited basis and, over her mother's objection, then ordered the woman to be released.  Although the Office of Public Advocacy had already been appointed as temporary guardian for the woman, when OCS released her it did not have a permanency plan of guardianship formally in place.  The woman's mother appeals her daughter's release from OCS's custody.  Because the woman is now 20 years old, we dismiss this appeal as moot.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Mia A. is the mother of Melissa A.[1]  Melissa is a 20-year-old individual who is developmentally disabled.  Melissa is diagnosed with Fragile X Syndrome, a significant cause of mental retardation in females.  Melissa also often exhibits echolalia.[2]  As a result of her disabilities, Melissa is "unable to make sound decisions regarding her health, welfare, finances, or other common legal matters handled by competent adults, and she will require lifelong assistance."  Functionally, she operates at roughly the ability of a six-year-old  and "requires 24-hour support and supervision."  She is not capable of independent living.

In June 2009, OCS received a report of neglect indicating that Melissa was living in a storage unit with Mia.  OCS located Melissa and Mia in the storage unit in July 2009.  In addition to the storage unit incident, OCS was concerned that Mia could not safely care for Melissa because of Mia's history of mental health problems and erratic behavior.  An Emergency Petition for Adjudication of Child in Need of Aid

---

[1]    Pseudonyms are used for all family members to protect their privacy.

[2]    Echolalia is a condition in which an individual repeats vocalizations made by another person.

(CINA) and for Temporary Custody over Melissa was filed in July 2009. On November 16, 2009, six weeks before Melissa's 18th birthday, the superior court adjudicated Melissa as a child in need of aid under AS 47.10.011(6),[3] (9),[4] and (11).[5] The superior court committed Melissa to OCS custody through December 30, 2010, the date of her 19th birthday.

In June 2010, OCS served on the parties a Report and Request for Permanency Findings. In the report, OCS recommended reunification as Melissa's permanency goal but also noted that "things have started to deteriorate" since setting this goal. On June 7 and June 9, 2010, the superior court held a permanency hearing. The hearing primarily focused on whether OCS had made reasonable efforts to reunite the family and on Mia's visitations with Melissa. The State put on testimony that OCS's recommended permanency goal continued to be reunification, but because of Melissa's age OCS also intended to pursue a concurrent permanency goal of guardianship. The superior court acknowledged that OCS would have to pursue a guardianship for Melissa. But the court endorsed only reunification as Melissa's permanency plan goal, noting that

---

[3] "[T]he child has suffered substantial physical harm, or there is a substantial risk that the child will suffer substantial physical harm, as a result of conduct by or conditions created by the child's parent, guardian, or custodian or by the failure of the parent, guardian, or custodian to supervise the child adequately . . . ."

[4] "[C]onduct by or conditions created by the parent, guardian, or custodian have subjected the child or another child in the same household to neglect . . . ."

[5] "[T]he parent, guardian, or custodian has a mental illness, serious emotional disturbance, or mental deficiency of a nature and duration that places the child at substantial risk of physical harm or mental injury . . . ."

"right now that's the only plan I've got, and I do find that it is appropriate to reunify her with her family."[6]

On June 17, 2010, OCS held a team decision meeting to discuss options for Melissa. At the meeting, OCS dropped the reunification goal and decided to focus on adult guardianship as Melissa's permanency goal. On July 6, 2010, OCS filed another Report and Request for Permanency Findings. In the report OCS recommended Another Permanent Plan Living Arrangement as Melissa's permanency plan. Because of Mia's recent erratic behavior and medical condition, OCS modified its position to state that Mia had "*not* made substantial progress in remedying the conduct and conditions that cause the child to be a child in need of aid . . . ." OCS did not request a permanency hearing at this time.

On August 30, 2010, OCS requested a hearing on its changed permanency plan. On September 9, 2010, the parties appeared before the court and indicated that the hearing would be contested. On September 10, 2010, OCS filed another Report and Request for Permanency Findings, in which OCS changed its recommended permanency plan for Melissa to guardianship.

On September 30, 2010, the superior court held the first day of hearings in the second requested permanency hearing. Mia sought a specific finding that the permanency hearing was not held in a timely fashion; she also sought a potential sanction against OCS. OCS first argued that the superior court had previously adopted the goal of guardianship, but the court rejected this argument. OCS then presented its evidence through social worker Carla Cheap, who testified to the history of her interactions with Mia, OCS's reasonable efforts, and Mia's visitation schedule.

---

[6] The superior court later entered its Findings and Order Following Permanency Hearing, where it formally approved the goal of reunification, on July 13, 2010. The court order was retroactive to June 9, 2010.

The next day (October 1) OCS learned that an assisted-living placement in a Fairbanks Resource Agency (FRA) home was available. On October 4, OCS filed an Emergency Petition for Appointment of Temporary Guardian with Conservatorship Powers over Melissa.[7] On October 11, 2010, the superior court, acting in the guardianship case, issued an Order Appointing Temporary Guardian Under AS 13.26.140, appointing the Office of Public Advocacy (OPA) as Melissa's temporary guardian. The order also stated that "[t]he Office of Children's Services shall move as quickly as possible to release custody of ward and shall transfer the ward's trust to the Office of Public Advocacy at that time."

## B. Proceedings

On October 13, 2010, the State filed a motion in the CINA case to release Melissa from OCS custody and moved for expedited consideration of the motion. The motion for release was supported by an affidavit from social worker Carla Cheap, who stated that OPA had been appointed temporary guardian over Melissa and that Melissa had been accepted to an assisted-living home operated by FRA. Cheap also asserted that in order for OPA to be able to access Melissa's SSI and Permanent Fund Dividend to pay for the placement, Melissa had to be released from OCS custody.

The following day the parties appeared at a scheduled continuation of the permanency hearing. Rather than continuing with the permanency hearing, the superior court turned to OCS's expedited motion to release custody. Mia opposed expedited consideration of the motion, arguing that OCS had not complied with the rules regarding

---

[7] OCS filed a Petition for Appointment of a Guardian and Conservator over Melissa on July 29, 2010. After the superior court appointed OPA as Melissa's temporary guardian, it held a hearing regarding OCS's petition seeking the appointment of a full guardian with powers of conservator over Melissa. The superior court appointed OPA to serve as Melissa's full guardian on December 27, 2010.

expedited consideration and requesting an opportunity to consider the substantive motion regarding Melissa's release from OCS custody. The court went off record to give the parties an opportunity to read and consider the motion for expedited consideration. After the court went back on the record, Mia continued to oppose expedited consideration. She argued it was particularly inappropriate to grant expedited consideration because the parties were "in the middle of a contested permanency hearing where the goal has not even officially been endorsed that guardianship or another planned permanent living arrangement . . . was the appropriate and remains the appropriate goal in this case."

OCS acknowledged that the parties had been given short notice but contended the guardianship had been the subject of discussion among the parties for "a good number of weeks." OCS further argued that it was not worth risking a long-term placement for the purpose of "having a permanency hearing to address a goal that will last less than two months."

The court granted OCS's motion to expedite consideration and informed the parties that it would entertain argument on the underlying motion to release custody. The court then granted the motion releasing Melissa from OCS custody, effectively ending the CINA case.

Mia appeals the superior court's release of Melissa from OCS custody, arguing that (1) the court violated AS 47.10.080 by ordering Melissa's release from custody without appropriately applying statutory requirements governing permanency hearings; (2) this statutory violation violated Mia's due process rights; and (3) the superior court erred when it granted expedited consideration of OCS's motion to release custody.

## III.    STANDARD OF REVIEW

"We apply our independent judgment in determining mootness because,

as a matter of judicial policy, mootness is a question of law."[8]

## IV.   DISCUSSION

### Mia's Appeal Is Moot Because Melissa Cannot Consent To Continued OCS Custody.

We have held that "[a] claim is moot where a decision on the issue is no longer relevant to resolving the litigation, or where it has lost its character as a 'present, live controversy,' that is, where a party bringing the action would not be entitled to any relief even if he or she prevailed."[9]

OCS contends Mia's appeal is moot because OCS may only assert custody over a 20-year-old individual if the individual consents to further custody and a court finds that extended OCS custody is in the individual's best interest. "[B]ecause Melissa functions cognitively at the level of a 4-to-7-year-old child," OCS argues, "it is doubtful that she possesses the capacity to consent to continued OCS custody." Thus, even if a court were to agree with the merits of Mia's claim, OCS contends that Mia would not be entitled to the relief she seeks.

In her reply brief, Mia argues that the record does not establish that Melissa is unable to provide consent. Moreover, Mia argues that any such "gaps" in the record "merely demonstrate[] the error of the trial court's failure to hold a hearing on the contested permanency plan." Mia concludes that "the appropriate remedy is to remand this case for a determination whether Melissa is or is not able and does or does not consent to continued OCS custody."

---

[8]   *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 534 (Alaska 2005) (citing *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001)).

[9]   *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) (quoting *Municipality of Anchorage v. Baxley*, 946 P.2d 894, 899 (Alaska App. 1997) and citing *Maynard v. State Farm Mut. Auto. Ins. Co.*, 902 P.2d 1328, 1329 n.2 (Alaska 1995)).

Alaska Statute 47.10.080(c) provides:

(c) If the court finds that the child is a child in need of aid, the court shall

(1) order the child committed to the department for placement in an appropriate setting for a period of time not to exceed two years or in any event not to extend past the date the child becomes 19 years of age, except that the department, the child, or the child's guardian ad litem may petition for and the court may grant in a hearing
. . . .

(B) additional one-year extensions of commitment past 19 years of age that do not extend beyond the person's 21st birthday *if the continued state custody is in the best interests of the person and the person consents to it* . . . .[10]

Melissa was born on December 30, 1991, and is now 20 years old. Pursuant to AS 47.10.080(c), OCS may assert custody over Melissa only if: (1) OCS, Melissa, or Melissa's guardian ad litem petition for continued state custody; (2) a court finds that continued custody is in Melissa's best interests; and (3) Melissa consents to continued custody.

As noted above, Melissa suffers from various disabling conditions. As a result of her disability, Melissa is "unable to make sound decisions regarding her health, welfare, finances, or other common legal matters handled by competent adults, and she will require lifelong assistance." Functionally, she operates at roughly the ability of a six-year-old individual and "requires 24-hour support and supervision."

Subsequent to her release from OCS custody, the superior court determined that Melissa required full legal guardianship with powers of conservatorship. Before a court appoints a guardian or conservator over an adult individual, it must be shown by

---

[10]     AS 47.10.080(c) (emphasis added).

clear and convincing evidence that the individual is incapacitated.[11] An "incapacitated person" is defined in AS 13.26.005(5) as "a person whose ability to receive and evaluate information or to communicate decisions is impaired for reasons other than minority to the extent that the person lacks the ability to provide the essential requirements for the person's physical health or safety without court-ordered assistance. . . ."[12] In the guardianship proceeding over Melissa, her incapacity was stipulated to and is not at issue.

In its Order Appointing Full Guardian with Powers of Conservator, the superior court found that Melissa "is totally without capacity to care for [herself]" and appointed a full guardian. Melissa was not present at the guardianship proceedings because the court visitor "felt that it was emotionally above [Melissa's] head and it was creating conflict." The court also determined that Melissa was not able to express a preference regarding who should be appointed as her guardian. In its order, the superior court found that Melissa lacks "the ability to provide for [herself]" in the following areas:

(1)     Medical Care.
(2)     Mental Health Treatment (if any is required).
(3)     Housing.
(4)     Personal care, educational and vocational services necessary for [her] physical and mental welfare . . .
(5)     Application for health and accident insurance and any other private [or] governmental benefits to which [she] may be entitled.
(6)     Physical and mental examinations necessary to determine [her] medical and mental health treatment needs.

---

[11]     AS 13.26.113(b) ("The burden of proof by clear and convincing evidence is upon the petitioner, and a determination of incapacity shall be made before consideration of proper disposition.").

[12]     AS 13.26.005(5).

(7)     Control of [her] estate and income in order to pay for
        the cost of services.  [Melissa] is not able to manage
        [her] income and assets in order to acquire the services
        [she] needs.

We agree with OCS that the record demonstrates Melissa's inability to consent to continued state custody.  Her developmental disability renders her unable to provide for herself regarding many important life decisions and therefore to make important decisions regarding her custody, including her ability to consent to continued state custody.  Accordingly, even if Mia were successful on the merits of her claims, she would not be entitled to the relief she seeks.[13]  This case is therefore moot.

## V.     CONCLUSION

For the reasons discussed above, we DISMISS this appeal as moot.

---

[13]     Because we find that Melissa lacks the ability to consent to continued OCS custody, we do not address whether continued state custody would be in Melissa's best interests, which would also be required for OCS to maintain custody.